DITBERNER, Respondent, vs. BESS, Appellant.

*April 14—May 2, 1916.*

*Vendor and purchaser of land: Fraud: Estoppel: Resale: Foreclosure of contract: Equity: Rights of original vendee: Liens: Parties.*

1. One G., who had an interest in land, agreed to procure the title of the other owners and convey to plaintiff for $2,000. Plaintiff paid $50 down, also paid off a mortgage of $258 owing by G., and took possession. Afterwards defendant contracted to purchase the land from plaintiff for $2,500, paid $50 down, and agreed to pay $750 in one month and give a mortgage for the remainder. Plaintiff turned over the possession to defendant. Thereafter, by collusion with G., defendant purchased and got conveyances of the land from G. and the other owners for $2,100. Defendant having defaulted on his contract with plaintiff, the latter sued to foreclose that contract. *Held* that, by conveying to defendant, G. and the other owners had estopped themselves from claiming any purchase money from plaintiff under his contract with G., and that plaintiff, being relieved from that obligation, was not entitled to strict foreclosure or recovery of the full contract price against defendant, but was entitled to enforce against defendant and the land an equitable claim for the amounts

($308) paid out by him, and also the amount ($500) which defendant was to pay to plaintiff over and above what plaintiff was to pay to G., less the $50 which defendant had already paid to plaintiff.

2. On reversal, in such case, of a judgment of foreclosure and for the full purchase price under the contract between plaintiff and defendant, plaintiff is allowed to bring in as parties any persons claiming liens on the land under the defendant, and also to bring in G. as being a joint wrongdoer with the defendant in an attempt to defraud the plaintiff.

APPEAL from a judgment of the circuit court for Buffalo county: GEORGE THOMPSON, Circuit Judge. *Reversed.*

This is an action to foreclose a land contract for the purchase of certain lands by defendant from plaintiff. Defendant defaulted in making payments of the purchase price as the contract provided.

The land in question was owned by Peter Guler and his seven children. After some negotiations between plaintiff and Peter Guler and the children, Guler agreed to procure the title and sell the land to plaintiff for $2,000. The parties engaged an attorney to have the necessary papers drawn up, and upon learning that it would take some time to get the clear title from the children an agreement was signed by Peter Guler whereby he acknowledged payment of $50 and agreed to procure good title for *Ditberner.* The payment of the balance of the purchase price was also agreed upon in this contract. Some of the children executed the necessary deeds and left them with the attorney. The defendant, who had some furniture stored in the house, turned the keys over to plaintiff and plaintiff took possession. The plaintiff planted the land to corn and cared for it up to the time he surrendered possession to defendant. The defendant, *Bess,* negotiated with the plaintiff for the purchase of the land, and on June 17, 1914, signed a written agreement to purchase it at the price of $2,500. The plaintiff and *Bess* consulted the attorney who was acting for plaintiff and Peter Guler, to have the necessary papers prepared. The attorney ex-

plained to them that the plaintiff could not then give a clear
title, as the Guler children had not all deeded their interests
to him.    A memorandum of the agreement of sale was drawn
up and signed by plaintiff and $50 was paid him by the defend-
ant.    This memorandum provided for the payment of $750
on July 1, 1914, and the giving of a first mortgage to plaint-
iff to secure the balance of the purchase price.    Plaintiff
turned over possession of the place to defendant after this
contract was executed.    Soon after this Peter Guler went to
plaintiff's attorney and told him to do nothing more in re-
gard to his sale because he was not going to carry out his
original agreement with the plaintiff.    Peter Guler and de-
fendant colluded to ignore their contracts with the plaintiff
and that Peter Guler should sell the land to defendant at the
price of $2,100, which was $400 less than defendant had
agreed to pay plaintiff for it.    The defendant procured deeds
from Peter Guler and all his children, who had an interest in
the land, and had them recorded.    About the 1st day of July
plaintiff demanded payment of defendant under his contract
and stated that he was ready to close the deal.    Defendant
refused to pay plaintiff and also refused to give plaintiff the
possession of the land upon plaintiff's tender to return the
$50 he had received from defendant.

The defendant alleges that the plaintiff was acting as his
agent in the original purchase from Peter Guler and had
falsely represented the price to him and had fraudulently
taken the contract with Peter Guler in his own name.    Fur-
ther, that plaintiff had falsely and fraudulently induced the
defendant to enter into the contract here involved and to pay
the sum of $50, and by way of counterclaim defendant asks
to recover the $50 so paid.

The trial court found that plaintiff was not guilty of any
fraud in the transaction, as alleged by defendant, and entered
judgment to the effect that the defendant be barred from all
right, lien, claim, interest, or equity of redemption in the

land if he did not pay to plaintiff within thirty days from the time of the service of a copy of this judgment on him or his attorney the sum of $750 with interest, together with the costs and disbursements of the action, and execute and deliver to plaintiff a first mortgage on the premises to secure the sum of $1,700, payable in annual instalments of at least $100 each, with interest thereon at the rate of six per cent. per annum from July 1, 1914, as stated in the agreement. From such judgment this appeal is taken.

*M. L. Fugina,* for the appellant.

*S. G. Gilman,* for the respondent.

SIEBECKER, J. The judgment awarded goes upon the ground that plaintiff is entitled to recover the purchase price of the farm under the land contract between himself and defendant, and in default of the payment thereof to have the title to the premises transferred to him from defendant. As appears from the foregoing statement, the plaintiff had not the title to the land when he contracted with defendant to convey title upon the conditions expressed in the contract, and he is not capable of conveying the title of the premises to defendant pursuant to his contract because Peter Guler has disabled himself to acquire title thereto for plaintiff as required by his contract with plaintiff. It also appears that defendant has acquired title to the premises by conveyances from Peter Guler and his children and that this is the title plaintiff contracted to acquire and convey to defendant. The Gulers by their conveyance of the premises to defendant have estopped themselves from claiming any right to any of the purchase money from the plaintiff under his contract with Peter Guler for the conveyance of the premises. They must look to defendant for the purchase price of the farm. The result of these transactions is that defendant has the title to the premises which plaintiff promised to acquire for him and that plaintiff is relieved from his obligations under his con-

tract with Peter Guler. Plaintiff, however, has a right to
enforce whatever claim he has against defendant arising out
of their contract for the sale and conveyance of the premises.
Since the defendant's transaction with the Gulers relieved
plaintiff from paying them the balance due on the Peter
Guler contract, equity demands that the defendant receive
the benefit thereof to discharge his obligations under the con-
tract with plaintiff. It appears that the plaintiff had paid
Peter Guler $50 as part payment of the $2,000 purchase
price of the farm. Plaintiff also paid a $258 mortgage on
the farm owing by Peter Guler. These two payments total
$308. The plaintiff was also entitled to receive from the
defendant the amount which defendant agreed to pay plaint-
iff for the farm over and above the amount plaintiff agreed to
pay Guler, namely, $450, in addition to the $50 defendant
paid plaintiff when the contract was signed. The plaintiff's
equitable claim and interest in the land arising out of these
transactions therefore amounts to $758, and he has an equi-
table claim on the premises for this amount and for his costs
in the action. From this it follows that the court erred in
awarding plaintiff a judgment for the full contract price de-
fendant agreed to pay plaintiff for the premises, and also
erred in awarding a strict foreclosure of all of defendant's
interest and title that he had acquired from a source other
than plaintiff in default of the payment of the full $2,500
purchase price. The result of the decree would be to transfer
to plaintiff a title and interest in the land he never owned and
which he under the circumstances could not acquire. True,
he had a contract right to acquire title to the premises from
Peter Guler, but Peter Guler defaulted in securing title for
plaintiff as he had agreed, and plaintiff had no legal grounds
to compel the Guler children to deed to him. The defendant
purchased the premises directly from Peter Guler and chil-
dren, but this transfer does not operate to confer on plaintiff
the right to have such title and interest transferred to him

upon defendant's default under his contract with plaintiff. The only right plaintiff has under his contract of the sale of the premises to defendant is to enforce his equitable interest in the premises to the extent of the amount he has invested in the land, which is, as above shown, the sum of $758. This interest arises out of his contracts with Peter Guler and the defendant and under the purchase or payment of the Guler mortgage.

Plaintiff's rights against defendant for his claim can be secured by a judgment awarding him an equitable interest by way of a judgment lien on the premises to this amount, and, in case defendant defaults in paying it, directing a foreclosure and sale of the defendant's interest in the land and applying the proceeds of such sale in satisfaction of plaintiff's claim and the costs he incurred to enforce his rights. It also appears by the evidence that the defendant, *Bess,* had not the cash to purchase this land and that he intended in case of purchase to mortgage it or otherwise convey the title to secure the money to pay the purchase price. The record does not disclose what has been done in this regard. There is evidence tending to show that Peter Guler colluded with defendant to defraud plaintiff out of the $500 the defendant agreed to pay plaintiff for the land above the amount the plaintiff agreed to pay Peter Guler for securing and conveying a clear title thereof to plaintiff. It cannot be determined from the record whether plaintiff can be protected as against others who may have obtained liens on defendant's interests. In view of the fact that the judgment appealed from must be reversed, the plaintiff may desire to have others claiming liens, if any exist, made parties to this action and have their rights determined and declared. The plaintiff may also, if he is so disposed, ask to have Peter Guler, apparently a financially responsible person, made a party to this action upon the theory that he is a joint wrongdoer with defendant to defraud plaintiff of his rights to and interest in the lands, so as

to enable plaintiff to seek satisfaction of his demands by se-
curing judgment against both *Bess* and Peter Guler.    In the
light of these conditions we consider it appropriate that this
court should not enter a final judgment upon the record, but
that the case should be remanded to the circuit court for such
further proceedings as the parties may deem proper and as
the court may find just and conformable to law.

*By the Court.*—The judgment appealed from is reversed,
and the cause is remanded to the circuit court with direction
for further proceeding as indicated in this opinion, conform-
able to law.